## CITY OF YOUNGSTOWN v. PITTSBURGH & WESTERN R. R. CO. ET AL.

1. CEMETERY BELONGING TO AN ASSOCIATION, NOT A PUBLIC CEMETERY.

A cemetery situate in a city of the second class, belonging to a private association, organized under the act of February 24, 1848, S. Stat., 169, is not a public cemetery of such city, within the meaning of sec. 3284, Rev. Stat.

2. RIGHT OF RAILROAD TO CROSS A STREET.

The provision of said sec. 3284, which declares "A company may, whenever it is necessary in the construction of its road to cross a road or a stream of water, divert the

same from its location or bed," does not authorize a railroad company to construct and maintain its road across a street of a city without consent of the city authorities, or without appropriating the right to do so; but such right of occupancy of the street can be obtained only by agreement with the city authorities, or by appropriation, as provided in sec. 3283, Rev. Stat.

APPEAL from a judgment of the Court of Common Pleas of Mahoning county, dissolving a temporary injunction and dismissing the petition.

LAUBIE, J.

This action is brought by the city to restrain the defendants from building an embankment and railroad track across Mill street. Amongst other matters, the petition alleges that the defendants are constructing an embankment and railroad track diagonally across said street, at a considerable height above the level and established grade of the street, without any agreement with the city authorities, and against their protest, and without appropriating a right to such crossing. That Mill street is one of the principal streets of the city, and is a public highway or avenue, leading to a public cemetery of the city; and that by virtue of the provisions of sec. 3284, Rev. Stat., the defendants are prohibited from laying a track upon the street, but must cross the same either by a passageway underneath the street, or by an overhead bridge.

The defendants alleged that they are authorized to construct, and are constructing a line of railroad from Niles, in the county of Trumbull, to and through the city of Youngstown to the eastern boundary line of the state, and have the right to cross Mill street, and the streets and avenues of the city, without obtaining consent of the city authorities, or the right of crossing by appropriation, by virtue of the provisions of said sec. 3284, and upon no condition save that of restoring said street substantially to its former state of usefulness; and deny that Mill street is a highway, or avenue, leading to a cemetery, or that said cemetery is a public cemetery of said city within the meaning of said section.

Sec. 3284, Rev. Stat., is as follows:

"A company may, whenever it is necessary in the construction of its road to cross a road or a stream of water, divert the same from its location or bed; but the company shall without unnecessary delay, place such road or stream in such condition as not to impair its former usefulness; and any or all railroads hereafter constructed, which shall cross any avenue or public highway leading from a city of the first or second class, to a public cemetery of such city, situated within or without the limits of any such city, shall be constructed so as either to pass under or over such avenue or public highway, at such elevation or depression, as the case may be, as will allow the unobstructed passage of all wagons, carriages, or other vehicles which it may be necessary for any person to use upon such avenue or public highway."

Oak Hill cemetery, the cemetery in question, is owned by a private association, incorporated and organized in 1862, under the act of February 24, 1848; and within its enclosure the trustees of the township own a burial plat of about two acres in area, but which is under the management of the association. The city of Youngstown is a city of the second class, and the cemetery is within the corporate limits, and is ·bounded on each side by a street, one of which is Mill street.

Passing by the question whether Mill street is a highway leading to a cemetery, within the meaning of the statute, we are of the opinion that the cemetery in question is not a public cemetery of the city of Youngstown. The words, "public cemetery of such city," are used in this statute to indicate cemeteries

owned or held by such cities under chapter 7, div. 8, title XII, of the Revised Statutes, as distinguished from other cemeteries of a public character.

The preposition "of" is used here manifestly in its derivative sense, denoting possession or property, and therefore it is such cemeteries only as are owned or possessed by such cities that are meant; and those owned by a private association, whether organized for profit or not, are excluded.

The next question is: Have railroad companies the right to construct their roads across the streets of a city, and use the same without the consent of the city authorities, and without appropriating the right to do so? The determination of this question involves the consideration of sec. 3283, as well as said sec. 3284, Rev. Stat., and must be settled by the construction to be placed upon these sections.

Section 3283, is as follows:

"If it be necessary, in the location of any part of a railroad, to occupy any public road, street, alley, way or ground of any kind, or any part thereof, the municipal or other corporation, or public officers or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms, and conditions upon which the same may be used or occupied; and if the parties be unable to agree thereon, and it be necessary, in the judgment of the directors of such company, to use or occupy such road, street, alley, way or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road, in the manner and upon the same terms as is provided for the appropriation of the property of individuals; but every company which lays a track upon any such street, alley, road, or ground, shall be responsible for injuries done thereby to private or public property lying upon or near to such ground, which may be recovered by civil action brought by the owner before the proper court, at any time within two years from the completion of such track."

It is evident that this section refers to and includes any kind of occupation and use of a public road, street, alley, way, or ground, or any part thereof, whether such occupation and use be transverse or longitudinal. There is certainly nothing in the section which, in any manner, undertakes to limit such occupation to a longitudinal occupation, and therefore it includes any laying of a track upon a street without regard to its direction.

Every provision in the section is consistent only with this idea. The action, for instance, given to the owner of private or public property lying upon or near to such street, certainly is not intended to be based upon any occupation other than may be acquired under the provisions of the sections itself, and yet a right of action is manifestly given to recover for all injuries resulting from laying a track anywhere upon a street or public ground, to private or public property lying upon or near to such street or ground.

It may be conceded, that if this section authorizes railroad companies to appropriate a street, or any part thereof, to their own exclusive use and occupation, and destroy its use as a street, this construction of the section would not be permissible; as such right would authorize them to cut in two and destroy every street they would have to cross in their progress through a city, and thus bar communication between different parts of the city; a result which no process of interpretation would justify.

But this section provides for a joint use and occupancy of a street only. It is not designed to allow a company to appropriate a street, in the sense in which it takes the land of an individual, but in the sense in which it takes his property in a street, by subjecting it to an additional public use. Such appropriation is to be made only upon failure to agree with the municipal authorities upon the "manner, terms and conditions" upon which the street may be used and occu-

pied. In each case, whether acquired by agreement or by appropriation, it is the use or occupancy of the street, so far only as it may be necessary for the purposes of the railroad, that is to be acquired by the company. So much only of the easement of the public may be taken as is necessary for the purposes of the road; and while it might perhaps be safer for the public, or more convenient and advantageous for the company to take the whole and enclose it, a case can hardly be conceived of where it would be necessary to do so, especially in the case of a crossing only.

A city cannot devote a street to any use destructive of its use as a street; and under this section, cannot give to a railroad company a right to the exclusive use of a street. The K. S. R. R. Co. v. The B. & N. S. R. R. Co., 36 O. S., 250-51.

And that no greater right can be acquired by appropriation is in accord with the principle, that one party cannot acquire from another any greater right or estate than that other can confer by grant.

The right to appropriate property already devoted to a public use, so as to be destructive of such former use, may be conferred by legislative action, "but such right can only be conferred by express words, or by a necessary implication; and such implication can arise only when requisite to the exercise of the power expressly granted, and it can be extended no further than the necessity of the case requires." Hickok et al. v. Hine, 23 O. S., 523, 531.

And such power will not be inferred from the use of doubtful or uncertain phraseology. *Ibid.* Hatch v. The R. R. Co., 18 O. S., 92, 119; The R. R. Co. v. City of Dayton, 23 O. S., 510.

The history of this section will throw light on this question.

It was first enacted in the general incorporation act of February 11, 1848. 2 Cur., 1396. Before that time all rights of this character were conferred by special charter.

That section is as follows:

"Appropriations of streets and roads. If it shall be necessary in the location of any part of any railroad to occupy any road, street, alley, or public way or ground of any kind, or any part thereof, it shall be competent for the municipal or other corporation, or public officers, or public authorities, owning or having charge thereof, and the railroad company, to agree upon the matter [manner] and terms and conditions upon which the same may be used or occupied; and if said parties shall be unable to agree thereon, and it shall be necessary in the judgment of the directors of such railroad company, to use or occupy said road, street, alley or public way or ground, such company may apply to the court of common pleas of the county in which the same is situate, setting forth the aforesaid facts, and said court shall thereupon appoint three judicious, disinterested freeholders of the county, who shall proceed to determine whether such occupation is necessary, and if necessary, the manner and terms upon which the same shall be used, and make return of their doings in the premises to said court, who shall, if they deem the same just and proper, make the necessary order to carry the same into effect, or they may order a review of the same, as such court may consider justice and the public interest requires."

Here the freeholders were to determine the manner and terms upon which the street should be used by the company, and the only use or occupancy of a street that could be acquired, was one to be used in common with the municipality.

This section continued in force until the general incorporation act of May 1, 1852, was passed, in which sec. 12 took the place of said sec. 11; and sec. 3283. Rev. Stat., is a substantial transcript of said sec. 12, including the amendment to said sec. 12 conferring a right of action upon the owners of property injured by the construction of such railroad.

It will be seen, therefore, that the change made in the law, by the subsequent revisions, relates to the manner in which the railroad companies may acquire the use of streets, etc., upon failure to agree therefor with the public authorities having the same in charge; and this, evidently, for the purpose of bringing the proceeding into accord with the statutes upon the subject of appropriations.

In making this change, did the legislature intend to confer upon railroad companies a power to acquire greater rights in the streets of a city, upon failure to agree upon terms of a joint occupancy with the city authorities, than was conferred upon them by the original act?

Was it intended by this change, to confer upon these companies the right, upon failure so to agree, to take and appropriate the streets to their exclusive use, and destroy the former public easement and use? We think not.

"The court is only warranted in holding the construction of a statute which has undergone revision, to be changed, when the intent of the legislature to make such change is clear, or the language used in the new act plainly requires such change of construction to be made. Neither an alteration in phraseology, nor the omission or addition of words in the latter statute, necessarily require a change of construction." State v. Comrs., 36 O. S., 326; Allen v. Russell, 39 O. S., 336; City v. Davis, 43 O. S., 447, 449.

The change here made is not in the right itself, but in the method of obtaining it—the machinery for enforcing the right, upon failure to agree upon its exercise—and the addition perhaps, of a joint use untrammeled by conditions other than that specially authorized by general laws. The words of the original act describing the right to be acquired are retained; it is the "use or occupancy" of a street, etc., that is provided for, and the original act defines beyond question the meaning of those words to be a right of passage over and along the streets in common with the public. There is nothing in the new act which gives to these words a broader signification, or which in any way indicates an intention to change their meaning of a right to be enjoyed in common with the municipality, to one to be enjoyed exclusively by the company. The right is still limited by the necessity therefor, and that necessity requires no more than a use or occupancy in common with the public.

It certainly cannot be, that the legislature intended by this change of procedure, to authorize railroad companies to take from a municipal corporation a greater right in the streets of such municipality, than the law permits the municipality to grant in order to avoid the necessity of a resort to an appropriation.

In all the acts that have been passed in the state conferring upon corporations the power of eminent domain, and providing for its enforcement, the corporation has been required to describe in its petition the property, and rights and interests sought to be appropriated.

One railroad company may appropriate a right of crossing over the road of another company. Railway v. Railway, 30 O. S., 604. A municipal corporation may lay out a street across a railroad. 33 O. S., 510. And a municipality may enjoin a railroad company from laying its track in a street until it acquires the right to do so. State v. Railroad Co., 36 O. S., 434, 439.

There is therefore no impediment in the way of an appropriation of the right of a use of a street in common with a city.

It is claimed, however, that the occupancy of a street by laying a railroad track across it, is exempt from the operation of said sec. 3283, by virtue of the provisions of sec. 3284; that by the provisions of the latter section, railroad companies have the right to cross streets without the consent of the municipal authorities, and without appropriating the right of doing so, as against the municipality.

That section provides, as we have seen, that "A company may, whenever it is necessary in the construction of its road to cross a road or a stream of

water, divert the same from its location or bed;. but the company shall without
unnecessary delay place such road or stream in such. condition as not to impair its
former usefulness."  ·

The phraseology of this section differs from sec. 15 of the act of February
11, 1848, of which it is a revision; but as the right to permanently divert a road
from its location in crossing it, would seem to include a right to cross, and as that
seems to be the construction placed upon the section, we assume, without further
question, that it does confer such right of crossing without consent of the public
authorities, and without appropriation.                                    ·

The question, however, remains:    What is it that may be crossed without
such consent or appropriation?    It is "a road, or a stream of water," and. not a .
street, alley, or public way, as described in sec. 3283.

The word "road" is defined to be "a track for travel, forming a communica-
tion between one city, town or place, and another;" in other words a country
highway.  ·

Undoubtedly, as a generic term, it includes street and highway, but in
general usage, impresses an ordinary meaning upon words; "street" denotes a
main way in a city or town, and "road" a highway in the country; and it is in such
sense that they are used in these sections.    Indeed, the rule in the interpre-
tation of statutes, is to construe words according to their ordinary meaning.
Certainly, "road" is used in its ordinary acceptation in sec. 3283, and there is
nothing in sec. 3284 to indicate a change to its generic signification.    It is doubt-
ful, if the word "road" was omitted from sec. 3283, whether the provisions of
that section would apply to a highway in the country; but, at all events, it was
evidently deemed necessary to use the word, in contra-distinction to street, alley,
or way, in order to include country highways, as well as streets, alleys, and ways,
in cities and villages.

The legislature, therefore, had in mind, and recognized the ordinary distinc-
tion between roads and streets, and in sec. 3283 it made provision for each specific-
ally, while in sec. 3284 it made provision in regard to roads only, and thus mani-
fested an intention that the latter section should not apply to streets and ways
in cities and villages.                                           ·

The same distinction existed in the corresponding sections in the acts of
1848 and 1852, and has been maintained up to the present-time without change.

The reasons for this distinction are very plain; a street in a city, lined with
stores, shops, manufactories and dwellings, and thronged daily with teams and
people, presents entirely different considerations than a country highway; and
the right, without limitation, to cross with a railroad track, or to divert the one,
might well be refused as to the other; and as we have seen, the right to do so is
not to be inferred from uncertain or doubtful phraseology.

"Grants of corporate power, being in derogation of common right, are to
be strictly construed."    Currier v. M. &. C. R. R. Co., 11 O. S., 228.    And, as a
consequence, words and phrases granting such power are construed in their
most restrictive sense.

It would be unreasonable to confer upon railroad companies the power,
in building their roads. through cities, to run across the streets thereof at any
grade or angle, at their own pleasure, without limitation or condition, save to
restore them to their former condition of usefulness.        .

If this right is conferred by sec. 3284, the right to divert the streets from
their location is also conferred, and these companies may, as of right, lift the
streets of a city up bodily, as it were, and transfer them permanently to other loca-
tions, as the Valley Railway Company did with the Cuyahoga river, Valley Ry. Co.
v. Bohm, 34 O. S., 114.    Such rights in regard to a highway in the open country,
may be reasonable, but as' applied to the streets of cities, would. be not only un-
.reasonable. but an unnecessary and unwarranted invasion. of the. rights of such

communities, and nothing short of a legislative intent, clearly expressed, should be held to grant them.

In the opinion of a majority of the court, the defendants have no right to cross Mill street, not having agreed with the city authorities as to the manner and conditions of the occupancy, and not having acquired the right by appropriation.

Injunction granted.

JUDGE WOODBURY dissents from paragraph 2 of the syllabus.

Geo. W. Arrel and Wm. Maline, for plaintiff.
A. W. Jones and T. W. Sanderson, for defendants.